IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA
CIVIL DIVISION

CASE NO.:
DIVISION:

**SHAWN AND NANCY LINS**

   **Plaintiffs,**

v.

**GPLOGISTICS, INC.**

   **Defendant**.

_____/

## PLAINTIFFS' COMPLAINT

Plaintiffs, **SHAWN LINS** ("Mr. Lins") and **NANCY LINS** ("Mrs. Lins") (collectively referred to as "Plaintiffs"), by and through undersigned counsel, hereby file this complaint suing Defendant, **GPLOGISTICS, INC.** ("GP"), and respectfully state:

## INTRODUCTION AND THE PARTIES

1. Plaintiffs, Mr. and Mrs. Lins were and at all materials times were residents of Florida.

2. Defendant, GP, is a corporation incorporated under the laws of California where it also maintains its principal place of business. GP may be served with process on its California registered agent: Jerry Fraize located at 1728 Crebs Way, Upland, California 91784 or by other reasonable methods including agreement by counsel for GP to accept service of process.

## FACTS

3. A few years ago, Mr. and Mrs. Lins purchased an RV that came with the home they purchased, and within that RV included a GP SLD-D7 7" Double Sided A-Frame Ladder (the "Subject Ladder").

4. GP imported, distributed, supplied, and ultimately placed the Subject Ladder into the stream of commerce.

5. GP boasts on its website that these compact folding RV ladders are "engineered and built to be the finest, easiest to store RV ladders in the world."[1]

6. On Sunday, May 1, 2020, Mr. Lins was getting ready to repair a board on his patio cover.

7. Mr. Lins needed to utilize the Subject Ladder because the patio cover is roughly eight (8) feet tall.

8. Mr. Lins placed the Subject Ladder on leveled pavers and ascended the Subject Ladder without issue, carrying a piece of wood and his drill to rest atop the patio cover.

9. After descending the Subject Ladder without issue, Mr. Lins was preparing to climb back up, with nothing in hand to begin his repair project.

10. On his second trip up the Subject Ladder, suddenly and without warning, Mr. Lins suffered a catastrophic fall, despite utilizing the Subject Ladder in a normal and foreseeable manner because of the Subject Ladder's unreasonably dangerous and defective condition.

11. As a result, Mr. Lins fell head first into the concrete pavement, and sustained three fractures of his skull, multiple brain bleeds, and hospitalized for **twenty six** days, and unfortunately has continued to experience significant cognitive deficiencies from ongoing traumatic brain injury issues.

12. Plaintiffs' injuries and damages were caused by the Subject Ladder's defective condition. Specifically the Subject Ladder was defective in at least the following ways:

    a. The Subject Ladder was designed and manufactured using inferior, substandard, and inadequate component parts and processes;

---

[1] http://www.gpl-inc.com/index.php?pagename=home (Last accessed August 18, 2021).

    b. The Subject Ladder was unreasonably dangerous and defective as imported and sold by GP, because there was no Failures Modes and Effects Analysis ("FMEA") or other hazard analysis, quality assurance, or testing performed by GP to ensure the Subject Ladder complied with applicable standards and was free of latent hazards.

    c. The Subject Ladder was designed and manufactured in such manner that it had an unreasonable propensity to cause a user to catastrophically fall when being used for its reasonably foreseeable and intended purpose; and

    d. The Subject Ladder did not come with adequate warnings or instructions advising consumers and users about the Subject Ladder's defective condition.

13. The defects cited in Paragraph 12 of this Complaint rendered the Subject Ladder unreasonably dangerous beyond the contemplation and expectations of ordinary consumers, including Mr. Lins.

14. The risk of danger associated with designing, manufacturing, assembling, distributing, supplying, and selling the Subject Ladder as it was outweigh any real or perceived benefits.

15. At the time the Subject Ladder was designed, manufactured, assembled, distributed, supplied, and sold, alternative designs and methods of manufacturing existed that would have resulted in a safer and more useful ladder with little to no increase in cost to GP.

16. The defects cited in Paragraph 12 of this Complaint individually or in combination caused or contributed directly to cause or enhance Mr. Lins' injuries and damages.

17. Had none of the defects cited in Paragraph 12 of this Complaint been present in the Subject Ladder, Plaintiffs' injuries and damages would have been avoided or reduced.

18. The defects cited in Paragraph 12 of this Complaint were caused by GP's strict liability, negligence, and other liability-producing misconduct.

19. At the time GP placed the Subject Ladder into the stream of commerce, GP knew or should have known that the Subject Ladder was defective in the ways cited in Paragraph 13 of

this Complaint.

20. Despite its knowledge or notice that the Subject Ladder was defective and unreasonably dangerous, GP did nothing to warn or protect consumers, despite its ability to do so.

**JURISDICTION & VENUE**

21. This is an action for damages that exceeds the sum of THIRTY THOUSAND DOLLARS ($30,000.00), exclusive of costs, interest and attorneys' fees (the estimated value of Plaintiff's claim is in excess of the minimum jurisdictional threshold required by this Court). Accordingly, Plaintiffs have entered "$30,001" in the civil cover sheet for the "estimated amount of the claim" as required in the preamble to the civil cover sheet for jurisdictional purposes only (the Florida Supreme Court has ordered that the estimated "amount of claim" be set forth in the civil cover sheet for data collection and clerical purposes only). The actual value of Plaintiffs' claim will be determined by a fair and just jury in accordance with Article 1, Section 21, Fla. Const.

22. This Court is authorized to exercise personal jurisdiction over GP pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the causes of action stated herein arise out of GP:

    a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

    b. Committing a tortious act within Florida; or

    c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) GP was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, imported, distributed or manufactured by GP anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

23. This Court is authorized to exercise personal jurisdiction over GP pursuant to the Florida Long-Arm Statute, Fla. Stat. § 48.193(2), because GP is engaged in substantial and not isolated activity within Florida through its online sales of RV ladders like the Subject Ladder, to companies like Wal-Mart and RV stores like Camping World.

24. Venue is proper in this Court because:

   a. The incident occurred and the cause of action accrued in Orange County;

   b. It would be convenient for all the parties, as plaintiff's damages and treatment and all of those witnesses are located in Orlando, Orange County; and

   c. GP is a foreign corporation that is not authorized by the Florida Department of State to do business in Florida;

## CONDITIONS PRECEDENT

25. All conditions precedent have been satisfied or excused.

## COUNT I
## STRICT LIABILITY AGAINST GPLOGISTICS, INC.

26. Plaintiffs re-allege and incorporate Paragraphs 1 through 25 of this Complaint as if restated verbatim herein.

27. GP manufactured, imported, distributed, supplied, and ultimately placed the Subject Ladder into the stream of commerce.

28. GP intended for consumers like Mr. Lins to purchase and use the Subject Ladder.

29. Mr. Lins used the Subject Ladder for its intended or foreseeable use.

30. The Subject Ladder is defective in its design, manufacture, and instructions/warnings.

31. The Subject Ladder was defective and unreasonably dangerous to ultimate users, operators or consumers, including Mr. Lins, when sold and distributed by GP because of manufacturing, design, and inspection defects, including the following:

    a. The Subject Ladder was manufactured in such a manner so that it had an unreasonable propensity to cause a user to fall during normal operating conditions; and

    b. The Subject Ladder failed to perform as a reasonable consumer would expect under foreseeable operating conditions.

32. The Subject Ladder's defects, whether individually or in combination, rendered the Subject Ladder unreasonably dangerous for intended or foreseeable use.

33. The Subject Ladder left GP's possession and control with the defects Mr. Lins alleges, and the Subject Ladder remained in this defective and unreasonably dangerous condition up until and throughout the events giving rise to Plaintiffs' injuries and damages.

34. The defects in the Subject Ladder described above directly and proximately caused the injuries and damages sustained by Plaintiffs in that it directly and in a natural and continuous sequence produced or contributed substantially to Mr. Lins' injuries.

35. As a direct and proximate result of the foregoing, Mr. Lins sustained serious bodily injuries, resulting in pain and suffering, impairment, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment and lost wages.

**WHEREFORE**, Plaintiffs, **SHAWN LINS** and **NANCY LINS**, demand judgment against Defendant, **GPLOGISTICS, INC.**, for compensatory damages, costs, and interest as allowed by law, and for such other relief as the Court deems just, and demand a trial by jury on all issues so triable as a matter of right.

### COUNT II – NEGLIGENCE GPLOGISTICS, INC.

36. Plaintiffs re-allege and incorporate Paragraphs 1 through 25 of this Complaint as if restated verbatim herein.

37. GP manufactured, imported, distributed, supplied, and ultimately placed the Subject Ladder into the stream of commerce.

38. GP intended for consumers like Mr. Lins to purchase and use the Subject Ladder.

39. GP owed a duty of care to consumers, including Mr. Lins, to manufacture, design, import, distribute, and supply the Subject Ladder in a way that that did not render the Subject Ladder defective and unreasonably dangerous for its intended or foreseeable use.

40. GP owed a duty of care to consumers, including Mr. Lins, to distribute and sell the Subject Ladder without defect and in a reasonably safe condition for its intended or foreseeable use.

41. GP owed a duty of care to consumers, including Mr. Lins, to provide adequate warnings and instructions with the Subject Ladder advising of the Subject Ladder's defective and unreasonably dangerous condition and advising consumers and users how to avoid being injured from the Subject Ladder's defects.

42. GP owed a duty of care to consumers, including Mr. Lins, to adequately test, inspect, and ensure the quality of the Subject Ladder before distributing and selling the Subject Ladder to consumers.

43. GP breached its duty to Mr. Lins by designing, manufacturing, importing, supplying, and distributing the Subject Ladder in a way that that rendered the Subject Ladder defective and unreasonably dangerous for its intended or foreseeable use.

44. GP breached its duty to Mr. Lins by distributing and selling the Subject Ladder while the Subject Ladder was defective and unreasonable dangerous for its intended or foreseeable use.

45. GP breached its duty to Mr. Lins by failing to provide adequate warnings and instructions with the Subject Ladder advising of the Subject Ladder's defective and unreasonably dangerous condition and failing to advise consumers and users how to avoid being injured from

the Subject Ladder's defects.

46. GP breached its duty to Mr. Lins by failing to adequately test, inspect, and ensure the quality of the Subject Ladder before distributing and selling the Subject Ladder.

47. GP knew or reasonably should have known that the Subject Ladder would cause injury to consumers like Mr. Lins as a result of the Subject Ladder's defective and unreasonably dangerous condition.

48. At no time did GP take action to remedy the Subject Ladder's defective and unreasonably dangerous condition or warn consumers about its negligent design, manufacture, import, distribution, and/or sale of the Subject Ladder, despite GP's ability to do so.

49. GP's breaches of the duties it owed to Mr. Lins actually and proximately caused or contributed to cause Plaintiffs' injuries and damages.

50. As a direct and proximate result of the foregoing, Mr. Lins sustained serious bodily injuries, resulting in pain and suffering, impairment, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment and lost wages.

**WHEREFORE**, Plaintiffs, **SHAWN LINS** and **NANCY LINS**, demand judgment against Defendant, **GPLOGISTICS, INC.**, for compensatory damages, costs, and interest as allowed by law, and for such other relief as the Court deems just, and demand a trial by jury on all issues so triable as a matter of right.

## COUNT III- LOSS OF CONSORTIUM

51. Plaintiff Nancy Lins re-alleges and incorporates Paragraphs 1 through 25 of this Complaint as if restated verbatim herein.

52. At the subject of the incident giving rise to this Complaint, the Plaintiffs were

married and Plaintiffs continue to be married.

53. As a result of the strictly liable conduct and wrongful and negligent acts of Defendant GP, Plaintiff Mrs. Lins has suffered and will continue to suffer the following damages: i) Loss of Consortium and damage to her husband/wife relationship with Mr. Lins; ii) loss of affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support and love; and iii) Mental anguish.

54. The aforementioned injuries and damages to Plaintiff Mrs. Lins were caused solely and proximately by the strict liable conduct and wrongful and negligent acts of the Defendant GP.

**WHEREFORE**, Plaintiff, **NANCY LINS,** demands judgment against Defendant, **GPLOGISTICS, INC.**, for damages, costs, interest, and such other relief that this Court deems just.

### JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

**WHEREFORE,** Plaintiffs, **SHAWN LINS** and **NANCY LINS**, pray that upon final judgment, and that they have and recover: trial by jury which is hereby demanded; judgment against Defendant, **GPLOGISTICS, INC**.; pre-judgment interest as allowed by law; post-judgment interest as allowed by law; damages; cost of suit; and such other relief, at law or equity, to which Plaintiffs may be justly entitled.

Dated: August 25, 2021                                     Respectfully Submitted,

                                                                     */s/ Harris I. Yegelwel*
                                                            **HARRIS I. YEGELWEL, ESQUIRE**
                                                            Florida Bar No. : 124285
                                                            Morgan & Morgan, P.A.
                                                            20 N. Orange Avenue Suite 1600
                                                            Orlando, FL 32801

Telephone: (407) 418-2081
Facsimile: (407) 245-3392
Primary email:
hyegelwel@forthepeople.com
Secondary email:
jsamulonis@forthepeople.com
*Attorney for Plaintiffs*